IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JALECIA MOSLEY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:21-CV-1699-L** |
| | § | |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant's Motion for Summary Judgment (Doc. 27), filed July 15, 2022; and Defendant's Motion for Reconsideration (Doc. 48), filed January 12, 2023. For the reasons herein explained, the court **grants** Defendant's Motion for Summary Judgment ("Motion") (Doc. 27); and **denies as moot** Defendant's Motion for Reconsideration (Doc. 48).

## I.     Factual and Procedural Background

Jalecia Mosley ("Ms. Mosely" or "Plaintiff") brought this action against her former employer Liberty Mutual Insurance Company ("Liberty Mutual" or "Defendant") under Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Texas Commission on Human Rights Act ("TCHRA"). Ms. Mosley began working for Liberty Mutual as a Bodily Injury Claims Resolution Specialist in August 2016. [1] She was subsequently promoted to a Claim Teams Manager, and she remained in this position until her employment with Liberty Mutual was terminated on January 26, 2021.

---

[1] Unless otherwise indicated, the facts referenced in this memorandum opinion and order are undisputed.

**Memorandum Opinion and Order - Page 1**

Ms. Mosely was fired by Liberty Mutual after she filed a formal report, complaining about communications from fellow Claim Teams Manager Paul Feller ("Mr. Feller"), which she considered to be inappropriate and increasing in frequency. Ms. Mosley developed a friendship with Mr. Feller in 2019 that included mutual joking, compliments, lunch and happy hours outside of work, and sexual banter.  Beginning in early 2020 and continuing through 2020, Ms. Mosley came to believe that Mr. Feller had crossed the line when their sexual banter escalated into what she perceived as unwanted sexual advances by him toward her that made her increasingly uncomfortable. She, nevertheless, continued her friendship with Mr. Feller, going to lunches and happy hours with him, texting him, and telling him "I love you," "I love a thick piece of meat," and asking questions with sexual overtones, for example, about what kind of underwear he was wearing.  Def.'s App. 50-52, 80, 81, 87, 88, 230, 234, 251, 261, 294, 302, 305, 313, 319, 320, 360.

Ms. Mosley first talked to her manager Walter Clemmons on December 7, 2020, about Mr. Feller's conduct.  Four days later, on December 11, 2020, Ms. Mosley filed a formal complaint about Mr. Feller with Liberty Mutual's Employee Relations department. In response to Liberty Mutual's investigation, Mr. Feller provided copies of some of the sexually explicit text messages that he and Ms. Mosley had previously exchanged, which also included derogatory and sexual comments by both about other employees who reported directly to them.  Liberty Mutual's investigation also revealed that Ms. Mosley had shared a video of her genital piercing with Crystal Reed, one of her female subordinates, who then apparently forwarded the video to Mr. Feller.[2]

---

[2] It is not entirely clear how Mr. Feller came to possess the video. When questioned by Liberty Mutual, Ms. Reed denied sharing the video with Mr. Feller. Ms. Mosley also denied providing the video to Mr. Feller but expressed the belief that Mr. Feller obtained the video from Ms. Reed given their close relationship and rumors that they were having an affair. Whether and how Mr. Feller obtained the video is not necessarily relevant to the court's analysis of Plaintiff's claims, except to the extent that it demonstrates the ease with which offensive text messages, photos, and videos can now be shared and disseminated through social media, even when the original communications regarding such information were thought or intended to be private.

After investigating Ms. Mosley's complaint and questioning her and Mr. Feller about their text messages, Liberty Mutual determined that they had both violated the company's sexual harassment and other employee conduct policies, and that such conduct warranted termination of their employment. Ms. Mosley was notified by Liberty Mutual on January 26, 2021, that her employment was being terminated.

On July 22, 2021, Ms. Mosley filed this lawsuit against Liberty Mutual in which she asserts claims for discrimination and retaliation.  She contends that she was discriminated against on the basis of her sex and fired in retaliation for making a claim of sexual harassment.  With respect to both claims, she argues that she was treated differently or less favorably than similarly situated male employees, including Mr. Feller.  On October 17, 2022, Liberty Mutual moved for summary judgment on all claims asserted by Plaintiff. Briefing on the motion was complete as of December 2, 2022, when Liberty Mutual filed its reply brief.

Resolution of Liberty Mutual's summary judgment motion, however, was delayed slightly because it also moved on December 2, 2022, for leave to supplement its summary judgment evidence to include information regarding its investigation of Andrew Schuetz, another Liberty Mutual manager.  Plaintiff first identified Mr. Schuetz during her September 2022 deposition as one of the male employee comparators who had engaged in similar conduct but was not fired or disciplined by Liberty Mutual.  Liberty Mutual contends that the evidence of its investigation and decision to fire Mr. Schuetz, shortly after his conduct was brought to its attention by Ms. Mosley, demonstrates that he was not treated more favorably than her.  The motion for leave, which was opposed by Plaintiff, was denied by the court on January 6, 2023.  Liberty Mutual then moved the court to reconsider the denial of its motion for leave. The motion to reconsider was ripe as of January 31, 2023, when Liberty Mutual filed its reply.

For the reasons herein discussed, the court determines that no genuine dispute of material fact exists regarding any of Plaintiff's claims, and Liberty Mutual is entitled to judgment as a matter of law on all claims asserted by Plaintiff in this action,[3] even without the supplemental reply evidence that it requested the court to consider in ruling on its summary judgment motion. Accordingly, in ruling on Liberty Mutual's Motion for Summary Judgment, the court considers only the competent summary judgment evidence included in Liberty Mutual's summary judgment motion/brief appendix (Doc. 29) and Plaintiff's response appendix (Doc. 39). Liberty Mutual's request for reconsideration is, therefore, moot and will be denied for this reason.

## II. Defendant's Motion for Summary Judgment

### A. Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Mutual Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux*

---

[3] In the "Background Facts" section of her response to Defendant's summary judgment motion, Plaintiff asserts, based on her declaration, that: "[f]ollowing her termination, [she] filed a general complaint explaining the nature of the company culture of similar[] conduct. Included in her report was a disclosure by [her manager] that Liberty Mutual knew it had a problem of paying African American employees less than white employees. She was never contacted about the complaint for any investigation." Pl.'s Resp. 8. Plaintiff's pleadings do not contain a claim for discrimination based on race or any factual allegations to support a claim for racial discrimination, and her reason for including the comment about African American employees in her summary judgment response is unclear. Regardless, it is well-established that a claim raised for the first time in the context of a summary judgment motion is "not properly before the court." *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (quoting *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). Thus, any claim based on racial discrimination raised for the first time in Plaintiff's summary judgment response is not properly before the court and will not be entertained.

*v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes

over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### B.   Discussion

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1). TCHRA discrimination claims are analyzed under the same standards as federal antidiscrimination laws, including Title VII, *see Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citation omitted), and "[t]he substantive law governing Title VII and TCHRA retaliation claims is identical." *Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 170 (5th Cir. 2014). The court, therefore, the analyzes Ms. Mosley's Title VII and TCHRA sex discrimination and retaliation claims under the same legal standards.

### 1.   Sex Discrimination

Claims of discrimination can be established through direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Ms. Mosley relies on circumstantial evidence. Claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* framework. *Id.*; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of sex discrimination. *McCoy*, 492 F.3d at 556-57.

To establish a prima facie case of discrimination, the plaintiff must show that he or she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his [or her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Morris v. Town of Indep*., 827 F.3d 396, 400 (5th Cir. 2016).

If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *McCoy*, 492 F.3d at 557. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *Id.* If the employer provides a legitimate nondiscriminatory explanation, the inference of discrimination drops out and the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802.

If the defendant satisfies its burden of production, the burden shifts back to the plaintiff. *McCoy*, 492 F.3d at 557. At this stage, the Fifth Circuit applies a "modified *McDonnell Douglas* approach," which allows a plaintiff to proceed under one of two alternatives: the pretext alternative or the mixed-motives alternative. *Rachid v. Jack in the Box, Inc*., 376 F.3d 305, 312 (5th Cir. 2004), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). Under the pretext alternative, the plaintiff must "offer sufficient evidence to create a genuine [dispute] of material fact . . . that the defendant's reason is not true, but is instead a pretext for discrimination." *Id.* (internal quotations omitted). Under the mixed-motives alternative, the plaintiff must offer sufficient evidence to create a genuine dispute of material fact "that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's

protected characteristic[.]" *Id.* "If a plaintiff demonstrates that [a Title VII protected characteristic] was a motivating factor in the employment decision, it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus." *Id.*

Liberty Mutual does not dispute that Plaintiff is a member of a protected class; that she was qualified for her position; or that she suffered an adverse employment action when she was fired. Liberty Mutual, instead, contends that Plaintiff cannot satisfy the fourth element of a prima facie case of discrimination with respect to Liberty Mutual employees Colin Laws, Crystal Reed, Vicky King, Andrew Schuetz, and Paul Feller. The court's analysis of Plaintiff's sex discrimination claim, therefore, focuses on this element—whether Plaintiff was "treated less favorably than other similarly situated employees outside the protected group." *Morris*, 827 F.3d at 400.

Regarding this requirement, the Fifth Circuit has explained as follows:

We have considered the requirement for one employee to be similarly situated to another on any number of occasions. Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

We do not, however, interpret "nearly identical" as synonymous with "identical." Applied to the broader circumstances of a plaintiff's employment and

that of [a] proffered comparator, a requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical. For example, it is sufficient that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor. Each employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable. As the Supreme Court has instructed, the similitude of employee violations may turn on the "comparable seriousness" of the offenses for which discipline was meted out and not necessarily on how a company codes an infraction under its rules and regulations. Otherwise, an employer could avoid liability for discriminatory practices simply by coding one employee's violation differently from another's.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259-61 (5th Cir. 2009) (footnotes and citations omitted).

### a.    Colin Laws

Liberty Mutual contends that it is entitled to summary judgment on Plaintiff's sex discrimination claim as it pertains to Mr. Laws because he was not similarly situated to Plaintiff. Plaintiff responds that, although she and Mr. Laws had a romantic relationship, she did not believe that their relationship violated Liberty Mutual's policy against managers dating their subordinates because Mr. Laws did not report directly to her.  He reported to Mr. Feller.  Additionally, Plaintiff asserts that, unlike her, Mr. Laws "was never investigated, counseled verbally or in writing, or otherwise disciplined for the relationship or any failure to report it to HR or otherwise. In fact, he was promoted to work in the HR department after Mosley left." Pl.'s Resp. 7.

Plaintiff, however, fails to address Defendant's argument that Mr. Laws was not similarly situated to her for various reasons. Whether Mr. Laws was treated differently or more favorably is quite beside the point because Defendant's evidence establishes, and Plaintiff does not dispute that:

[she] and Laws did not have the same job title, job responsibilities, or supervisor. Laws was a Claims Resolution Specialist, in charge of investigating and resolving

> insurance claims, and was a subordinate employee to [her]. On the other hand, [she] was a Claims Team Manager, in charge of leading and developing her own team of Claim Resolution Specialists. Laws reported to Feller, a Claims Team Manager, and did not supervise any employees. Plaintiff did not report to Feller. Plaintiff reported to Clemmons. *See Ortiz v. Shaw Grp. Inc.*, 250 F. App'x 603, 606-07 (5th Cir. 2007) (finding that non-terminated employee was not similarly situated to terminated employee based on difference in position and work experience that supported their business decisions).

Def.'s Summ. J. Br. 14-15.  As Plaintiff and Mr. Laws are not appropriate comparators, they are not similarly situated for the purposes of an employment discrimination analysis.  Plaintiff has, therefore, failed to establish a prima facie case of sex discrimination with respect to Mr. Laws and any dissimilar treatment by Liberty Mutual.

### b.    Crystal Reed

Defendant contends that any sex discrimination claim based on Liberty Mutual's treatment Ms. Reed fails for similar reasons:

> Plaintiff claims that Reed shared the photo that Plaintiff sent of her genitals with Feller but was treated more favorably when she was not terminated. This argument fails because Reed is within Plaintiff's protected class: she is also female. *See Tynes v. Nationwide Mut. Ins. Co.*, No. SA-18-CV-00242-FB, 2018 WL 6421200, at *4 (W.D. Tex. Dec. 5, 2018) (finding that a comparator within the same protected class cannot support a prima facie case for discrimination under Title VII). Furthermore, Plaintiff and Reed did not have the same job, job responsibilities, or supervisor. *Lee*, 574 F.3d at 260 (citations omitted). Reed was a Claims Resolution Specialist, in charge of investigating and resolving insurance claims and was supervised by Plaintiff. Plaintiff was a Claims Team Manager who reported to Clemmons.

Def.'s Summ. J. Br. 17-18.

In response, Plaintiff again attempts to explain and put her conduct in context in an effort to show that she did not intend to sexually harass Ms. Reed.  She also continues to maintain that, "[d]espite allegations that Reed showed the piercing video to Paul Feller, no disciplinary action was taken against her. She was not so much as verbally counseled. Nor was she punished for consenting to have the video sent."  Pl.'s Resp. 8.  Plaintiff, however, does not address the key

**Memorandum Opinion and Order - Page 10**

issues raised by Liberty Mutual's summary judgment motion—that Ms. Reed is a female and, thus, not outside her protected class,[4] and Ms. Reed was not similarly situated because she had a different job title, job responsibilities, and the two reported to different supervisors. Plaintiff has, therefore, failed to establish a prima facie case of sex discrimination based on any dissimilar treatment by Liberty Mutual of Ms. Reed.

### c.    Vicky King

Regarding Ms. King, Defendant asserts that it understands Plaintiff's argument to be as follows:

> Plaintiff suggested in her deposition that she was discriminated against because she was terminated for violating the drug and alcohol policy, but another female co-worker at Liberty Mutual drank too much alcohol at a happy hour and was not terminated. Again, King is within Plaintiff's protected class: she is also female. *See Tynes*, 2018 WL 6421200, at *4 (finding that a comparator within the same protected class cannot support a prima facie case for discrimination under Title VII). And Plaintiff was not terminated for violating the drug and alcohol policy. Thus, King was not treated more favorably than Plaintiff because neither employee was terminated for violating of the drug and alcohol policy.

Def.'s Summ. J. Br. 18. Because Ms. King is not outside of Plaintiff's protected class and was not treated more favorably than Plaintiff, Defendant argues that it is entitled to summary judgment on any sex discrimination claim by Plaintiff based on its treatment of her and Ms. King.

In responding to Liberty Mutual's summary judgment motion, Ms. Mosley does not mention Ms. King or address this argument by Liberty Mutual regarding Ms. King. Ms. Mosley,

---

[4] *See Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990) (explaining that the burden of Smith, the female plaintiff asserting a disparate treatment claim under Title VII, was to show "that the misconduct for which she was discharged was nearly identical to that engaged in *by a male employee* whom [the company] retained") (emphasis added and citation omitted).

**Memorandum Opinion and Order - Page 11**

therefore, waived this issue[5] and abandoned any claim based upon it.[6] As a result, Ms. Mosley has failed to establish a prima facie case of sex discrimination with respect to Ms. Reed.

### d.    Andrew Schuetz

Plaintiff points to Mr. Schuetz and Mr. Feller to support her contention that male employees at Liberty Mutual were treated more favorably.  Plaintiff contends that Mr. Schuetz engaged in similar conduct—sending disparaging text messages regarding the sexual practices of his subordinates—but, instead of being fired, he was promoted by Liberty Mutual.  Plaintiff further asserts that, like her, "Schuetz was also widely regarded as having a relationship with one of his direct reports," but Liberty Mutual Human Relations employee Allyson Jay would not commit during her deposition to firing him without any warning.  In addition, Plaintiff contends that Liberty Mutual "has made no showing [that Mr. Schuetz] has been investigated or disciplined for this conduct." Pl.'s Resp. 7-8.

Liberty Mutual asserts that it is entitled to summary judgment with respect to any sex discrimination based on Mr. Schuetz because he is not an appropriate comparator.  In this regard, Liberty Mutual contends that "Plaintiff cannot show that she was treated differently than Schuetz because [his] alleged conduct was not reported to Liberty Mutual until Plaintiff's deposition," and "Plaintiff has no evidence to show that Schuetz would not have been terminated for his conduct

---

[5] *See Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (failure to brief an issue at the district court level constitutes waiver of the issue on appeal); *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 (S.D. Tex. 2003) ("By analogy, failure to brief an argument in the district court waives the argument in that court as well."); *Kellam v. Metrocare Servs.*, No. 3:12-CV-352-P, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."), *aff'd sub nom.*, 560 F. App'x 360 (5th Cir. 2014) (citations omitted).

[6] *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff abandoned her retaliatory abandonment claim when she failed to defend the claim in response to a motion to dismiss); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (explaining that a plaintiff, "in his opposition to a motion for summary judgment cannot abandon an issue and then . . . by drawing on the pleadings resurrect the abandoned issue").

had it been reported to Liberty Mutual, investigated, and . . . substantiated." Def.'s Summ. J. Br.

19.  In addition, Liberty Mutual contends that Mr. Schuetz is not an appropriate comparator

because his "conduct was not of comparable seriousness":

> Schuetz did not send any photos of his genitals to his direct reports. Moreover, there
> were multiple conversations indicating the degrading and sexually degrading
> conversations about Plaintiff's direct reports, whereas the text messages produced
> from Schuetz were limited. Finally, there is no evidence that Schuetz predetermined
> a year end rating for one of the individuals that he spoke about to Plaintiff.
> However, because this conduct was never reported to Liberty Mutual[, it] did not
> have the opportunity to make the determination.

*Id.* 19 n.66.

The court agrees that Mr. Schuetz is not similarly situated because the issue regarding his

conduct was not brought to Liberty Mutual's attention until Plaintiff was deposed on September

20, 2022. Plaintiff admitted in her deposition that she never told anyone, during Liberty Mutual's

investigation of her conduct, that Mr. Schuetz had made derogatory sexual comments about

subordinates; rather, she only made a "general statement" to Liberty Mutual investigators Allyson

Jay and Virginia Bennett that this type of conduct was common in the office. Def.'s Summ. J. App.

61. Moreover, it is undisputed that no prior complaints regarding his conduct were reported by

other employees to Liberty Mutual, and Plaintiff has not pointed to any evidence that Liberty

Mutual was aware of Mr. Schuetz's conduct *when it terminated her employment*.

While Plaintiff states in a declaration that "Schuetz was . . .  widely regarded as having a

relationship with one of his direct reports," and "[s]o far as I know, he was not fired or disciplined,"

Pl.'s App. 6, conclusory allegations, unsubstantiated assertions, improbable inferences, and

unsupported speculation are not competent summary judgment evidence and insufficient to defeat

a motion for summary judgment.  *See Eason*, 73 F.3d at 1325; *see Forsyth*, 19 F.3d at 1533.  The

Fifth Circuit has also made clear that "a subjective belief of discrimination, however genuine,

can[not] be the basis of judicial relief." *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991) (quoting *Elliott v. Group Med. & Surgical Servs.*, 714 F.2d 556, 567 (5th Cir. 1983)).

Further, that Liberty Mutual learned about Mr. Schuetz's conduct for the first time during the discovery process in this litigation *after* Plaintiff was fired and filed this lawsuit is not evidence that Mr. Schuetz is similarly situated or was treated more favorably. Liberty Mutual could not have acted upon information regarding Mr. Schuetz's misconduct before learning about it. Likewise, any action that Liberty Mutual may have taken in investigating Mr. Schuetz and disciplining him *after* Plaintiff was fired is irrelevant for purposes of evaluating her sex discrimination claim.

Plaintiff contends that Liberty Mutual had ample opportunity before filing its summary judgment motion to follow up on her complaints *after* she was fired on January 26, 2021, but it chose only to investigate male employees for whom complaints had been filed. This argument, however, simply reinforces the court's determination that Liberty Mutual could not have investigated or disciplined Mr. Schuetz for engaging in conduct of which it was unaware of because, unlike Plaintiff's conduct, Mr. Schuetz's conduct was not brought to Liberty Mutual's attention until Plaintiff was deposed, approximately 20 months after her employment with Liberty Mutual was terminated. *See Glaskox v. Harris Cnty., Tex.*, 537 F. App'x 525, 530 (5th Cir. 2013) (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)).[7]   For the same

---

[7] In *Glaskox*, the Fifth Circuit affirmed the dismissal of the plaintiff's sex discrimination claim, reasoning that one comparator was not similarly situated because he resigned before the investigation of his conduct was completed, and another individual identified by the plaintiff was not an appropriate comparator or similarly situated because no complaint had been filed against him:

> Of the remaining four individuals, Kerr and Jason are the only other comparators whose conduct concerned sexually inappropriate acts. Kerr allegedly told another female dispatcher that "he knew she wanted his 10-1/2 inch [male organ]," **but this dispatcher declined to file a written complaint despite being advised by her supervisor to do so. Although Glaskox argues that this distinction does not undermine the substantial similarities he shares with Kerr, the lack of a sexual harassment complaint meant that Constable Jones was unaware of the incident and had no basis from which to begin an investigation.** . . . Accordingly, there is no showing that Kerr is similarly situated to Glaskox.

**Memorandum Opinion and Order - Page 14**

reasons stated in *Glaskox*, Mr. Schuetz is not similarly situated to Ms. Mosley because Liberty Mutual was not aware, when it fired her, that Mr. Schuetz had engaged in inappropriate conduct that, according to Ms. Mosley, is similar to the conduct for which her employment was terminated. Accordingly, Plaintiff has failed to establish that Mr. Schuetz was similarly situated as required for a prima facie case of sex discrimination.

### e.    Jerry Feller

Ms. Mosley next contends that she has established a prima facie case of discrimination with respect to Mr. Feller because "[s]he was fired without any warning despite an exemplary record with the company," whereas Mr. Feller was only given a verbal warning and counseling the first time two women previously complained about his sending them inappropriate text messages.  Pl.'s Resp. 11.  Plaintiff identifies Brittany Millikin and Victoria Westin as two female employees who previously complained about Mr. Feller.

Liberty Mutual disagrees and argues that Plaintiff's sex discrimination claim with respect to prior complaints against Mr. Feller fails because the circumstances surrounding the employment actions previously taken against Mr. Feller were not "nearly identical." Def.'s Summ J. Br. 16 (quoting *Lee*, 574 F.3d at 260) (citing *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir. 1985)).  For support, it points to evidence that the decision makers who decided to coach, rather fire, Mr. Feller in 2019 were different from the decision makers who decided to terminate Ms. Mosley (and Mr. Feller) without a prior warning or coaching in January 2021.  Def.'s Summ J. Br. 16 ("Enrica McDaniel was the investigator and the decision-maker for Mr. Feller's 2019 coaching," whereas "Bennett and Jay . . . investigated Plaintiff and recommended that she be terminated.")  *Id.* (citations and footnotes omitted).

---

*Glaskox*, 537 F. App'x at 530 n.22 (emphasis added).

Liberty Mutual further contends that the conduct that was the subject of complaints against Mr. Feller in 2019 is not comparable to Plaintiff's conduct, and this difference accounts for the differing treatment:

> Feller's conduct in this regard in 2019 differed from Plaintiff's conduct in 2020. The 2019 complaints against Feller arose out of Feller sending frequent text messages unrelated to work matters. According to the complainants, "the communication[s were] not sexual in nature." They simply wished to keep their relationship with Feller [as] one of colleagues and not friends outside of work. McDaniel determined that an on-the-spot coaching when she interviewed Feller, and a coaching when the investigation concluded[,] was the appropriate action. Plaintiff, however, sent degrading, sexually derogatory, and offensive comments about her direct reports to Feller and sexually graphic photos to her direct report.

*Id.* at 17 (citations and footnotes omitted).

Finally, Liberty Mutual argues that: "Plaintiff also claims that Feller was treated more favorably than Plaintiff in the investigation of Plaintiff's complaint in 2020. But the evidence conclusively establishes they were treated the same. Both Plaintiff and Feller had multiple policy violations, and both were terminated for these violations."  *Id.* at 17.

Plaintiff does not address these arguments by Defendant. She, instead, responds that Liberty Mutual's report regarding the investigation of her complaint against Mr. Feller "indicates [that] two previous women had complained about [his] inappropriate text messages making them uncomfortable, and that [he] had merely been verbally counseled." Pl.'s Resp. 4 (citing Pl.'s App. 58 & 102). For the reasons stated by Defendant, however, the evidence relied on by Plaintiff is insufficient to show that she and Mr. Feller were similarly situated given the differences in decisions makers and conduct.  The undisputed evidence shows that the decision makers in 2019 and 2021 were not the same, and there is no indication that Mr. Feller's conduct in 2019 that gave rise to the two complaints was sufficiently similar or offensive because the text messages he sent to the two female employees were not sexual in nature.

**Memorandum Opinion and Order - Page 16**

According to the 2019 report prepared by Enrica McDaniel, who investigated the complaints, Shanna McFarland and Victoria Westin both complained about text messages they had received from Mr. Feller. Ms. McFarland reported that the text messages she received were "not sexual in nature but did make her feel uncomfortable when he started to communicate more frequently, and the topics were more about her life outside of work." Def.'s Summ. J. App. 283. After Ms. McFarland told Mr. Feller that his texts were "making her uncomfortable," he "stopped communicating with her." *Id*. Ms. Westin also expressed feeling "uncomfortable" because Mr. Feller's texts were getting more personal in nature and increasing in number, but she similarly reported that his texts were "not sexual in nature." *Id*. As an example, she reported that "he started asking more personal questions like asking her what she was getting her boyfriend for Christmas and what does she look for in a boyfriend." *Id*. Ms. Westin indicated that she perceived his communications as an attempt to be friends outside of work, but she was not interested. *Id*. Ms. McFarland reported that she "had [a] similar experience with Paul [Feller]."). *Id*.

During its investigation of Ms. Mosley's conduct, on the other hand, Liberty Mutual discovered that Plaintiff had discussed her direct reports (female employees Erin Bauer and Ellen Gordon) and other subordinate employees like Mr. Laws in a sexualized, degrading manner with Mr. Feller. For example, in response to Mr. Feller's text that Ms. Bauer has "big boobs" and she "showed cleavage today—I was disgusted that I actually looked," Plaintiff responded: "Lol you liked it"; "You wanted to suck them." Def.'s Summ. J. App. 16. In response to text messages from Mr. Feller that Ms. Gordon "has big boobs," Plaintiff responded that Ms. Gordon was "disgusting." *Id*. She also said that Ms. Gordon "probably sucks a good [male organ]." *Id*. at 17. In response to Mr. Feller asking what Plaintiff and Mr. Laws were doing one evening, Plaintiff responded: "Practicing making a baby as usual"; "You know all the freaky stuff[.]" *Id*. at 20, 91.

When asked if she thought Mr. Laws could handle her, Plaintiff responded—"He handles me VERY well"—and told Mr. Feller that, "when he [Mr. Laws] comes up for air," she would tell him that Mr. Feller said hello.[8]  *Id.*

In response to Liberty Mutual's investigation and summary judgment motion, Plaintiff attempted and continues to attempt to explain away these and other inappropriate communications she shared with Mr. Feller by characterizing them as simply joking between friends. Regardless, the manner in which Plaintiff and Mr. Feller frequently communicated with each other and discussed their subordinates in a sexually explicit and degrading way is hardly comparable to the nonsexual, personal text messages that Mr. Feller sent to Ms. Westin and Ms. McFarland in 2019. *See Lee*, 574 F.3d at 260-61 (explaining that, "[i]f the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis," and "[t]he similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out[.]") (footnotes and citations omitted). The remoteness in time between the complaints and employment actions in 2019 and 2021 is another consideration that does not support a finding that Mr. Feller and Ms. Mosley were similarly situated.  *See id.* at 259 (footnote and citation omitted).

While Plaintiff points to evidence that her sending the video of her genital piercing to Ms. Reed was not meant to be sexual in nature and was not perceived by Ms. Reed as such, this communication by Plaintiff with an employee under her supervision is hardly comparable to the nonsexual text messages that Mr. Feller sent in 2019 to two women.  Thus, for all of these reasons,

---

[8] These are just a sampling of the key text messages identified by and relied upon by Defendant in its summary judgment motion. While the summary judgment record is replete with other sexually explicit and inappropriate text messages and instances of conduct involving Ms. Mosley and Mr. Feller, it is not necessary for the court to reference or discuss this evidence for purposes of resolving the issues raised by the parties.

the court agrees with Defendant that Plaintiff has failed to establish the fourth element of a prima facie case as required for her sex discrimination claim based on the differing treatment between Mr. Feller's conduct in 2019 that led to his being coached and Plaintiff's conduct in 2020 that led to her being fired in January 2021.

Relying on her declaration, Plaintiff also asserts that, when she first approached her manager Mr. Clemmons about Mr. Feller, he told her that another female employee, "Brittany Millikin, had complained about Feller years before." Pl.'s Resp. 3 (citing Pl.'s App. 3) (explaining that Mr. Clemmons communicated to her that "former employee, Brittany Millikin, complained of feeling uncomfortable with Feller years ago"). In her summary judgment response and declaration, however, Plaintiff acknowledges that the complaint by Ms. Millikin was never reported to Liberty Mutual's Compliance department, and Plaintiff's statement about Ms. Millikin feeling "uncomfortable" does not satisfy her burden of establishing that Mr. Feller engaged in comparable conduct of a sexually explicit and demeaning nature with or about Ms. Millikin. In addition, Plaintiff acknowledges that the complaint by Ms. Millikin occurred "years ago" or "years before" her own employment was terminated. *Id.* Consequently, for many of the same reasons already discussed regarding complaints by other women, Mr. Feller is not similarly situated to Ms. Mosley.

Without more, the statement in Plaintiff's declaration—that in December 2020, "I became aware of another claim that was reported about Feller by another employee, Victoria Westin, but this report did not result in termination"—is likewise insufficient to establish that Mr. Feller was similarly situated with respect to his conduct towards Ms. Westin. Pl.'s App. 3. It is also insufficient to rebut Defendant's evidence that Mr. Feller's text messages to Ms. Westin were "not sexual in nature but just getting to be too much and making her uncomfortable." Def.'s Summ. J. App. 283. As a plaintiff asserting that she experienced disparate treatment compared to her male

comparators, Ms. Mosley must not only identify such comparators, but also "produce . . . evidence that [they] were similarly situated employees." *Owens v. Circassia Pharm., Inc*., 33 F.4th 814, 827 (5th Cir. 2022) (citation omitted). Conclusory declarations unsupported by evidence that the "comparators were similarly situated outside of their job titles" is insufficient to raise a genuine dispute of material fact. *Id*. (footnotes omitted). Accordingly, the conclusory statements in Plaintiff's declaration are insufficient to create a genuine dispute of material fact of whether Mr. Feller was similarly situated to Plaintiff as far as his conduct with Ms. Westin and Ms. Milliken and the employment action that was or was not taken by Liberty Mutual.

Plaintiff has, therefore, failed to show that Mr. Feller was similarly situated with respect his conduct in 2019. Moreover, in not responding to Liberty Mutual's argument that she and Mr. Feller were both treated the same in the investigation of her complaint in December 2020, Plaintiff waived this issue and abandoned any claim based upon it.[9] Given the court's determination that Plaintiff has not established each of the requirements of a prima facie case of sex discrimination, Liberty Mutual is entitled to judgment as a matter of law on Plaintiff's sex discrimination claim. Accordingly, the court need not address the parties' remaining contentions as to whether they met their respective burdens of coming forward with evidence of a legitimate, nondiscriminatory reason and pretext in ruling on Plaintiff's discrimination claim. To the extent that the parties rely on this same evidence in briefing the viability of Plaintiff's retaliation claim, the court discusses it and the parties' related arguments in addressing the retaliation claim below.

## 2.    Retaliation

Plaintiff contends that she was fired in retaliation for filing a sexual harassment complaint against Mr. Feller.   The antiretaliation provision of Title VII "prohibits an employer from

---

[9] *See supra* nn.5-6.

'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 576-77 (5th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e-3(a)). When, as here, a retaliation claim under Title VII is based on circumstantial evidence, the *McDonnell Douglas* burden-shifting framework similar to that in discrimination cases applies. *Brown*, 969 F.3d at 577 (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425, 427 (5th Cir. 2000); and *McDonnell Douglas Corp.*, 411 U.S. at 802). Under this framework, the plaintiff must first establish a prima facie case of retaliation under Title VII by showing that: "(1) she engaged in a Title VII protected activity; (2) she was subject to an adverse employment action; and (3) "a causal connection exists between the protected activity and the adverse employment action." *Brown*, 969 F.3d at 577 (citation omitted).

"Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Id.* (quoting *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). Likewise, Plaintiff's state law retaliation claim, brought pursuant to the TCHRA, must be established by the but-for causation standard. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d. 483, 489 (5th Cir. 2004 (citations omitted). The but-for standard, however, "does not apply at the prima facie case stage." *Brown*, 969 F.3d at 577 (citing *Garcia v. Professional Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019)). "At the prima facie case [stage], a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Id.* at 243.

If the plaintiff satisfies his or her burden of establishing a prima facie case of retaliation, the employer has the burden of production to come forward with a legitimate, nonretaliatory reason for the adverse employment action. *Patrick v. Ridge*, 394 F.3d 311, 316 (5th Cir. 2004). If the employer sustains its burden, the burden shifts back to the plaintiff to show that the employer's proffered reason for the adverse employment action is pretextual. *Id.* A plaintiff can establish pretext "by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Brown*, 969 F.3d at 577 (quoting *Haire v. Board of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)). At the pretext stage, the inference of discrimination disappears, "and the issue becomes discrimination vel non,"[10] that is, whether Ms. Mosley's conduct was "the real reason" for her termination. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002).

To survive a motion for summary judgment, a plaintiff must ultimately show "a 'conflict in substantial evidence' on the question of whether the employer would not have taken the adverse employment action but for the protected activity." *Brown*, 969 F.3d at 577 (quoting *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)). Evidence is substantial when "it is of such quality and weight that reasonable and fair-minded [persons] in the exercise of impartial judgment might reach different conclusions." *Musser*, 944 F.3d at 561-62 (internal quotation marks and citation omitted). In evaluating whether the plaintiff has raised a genuine dispute of material fact regarding pretext, the court considers all competent summary judgment evidence or the "totality of evidence," including evidence raised at the prima facie and pretext stages. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).

---

[10] *E.E.O.C. v. Chevron Phillips Chem. Co.*, LP, 570 F.3d 606, 615 (5th Cir. 2009).

Liberty Mutual contends that Plaintiff's retaliation claim fails as a matter of law because, even if she can establish a prima facie case, she cannot show that the decision to fire her was merely a pretext for retaliation:

> Considering the timing of her complaint and the fact that Liberty Mutual first discovered Plaintiff's policy violations during its investigation of [her] complaint against Feller, Plaintiff will likely be able to establish a prima facie case of retaliation. But, as explained above [with respect to Plaintiff's discrimination claim], she cannot dispute Liberty Mutual's legitimate, non-retaliatory reasons for its decision to terminate her, nor can she establish that the decision to terminate her was merely [a] pretext for retaliation. Plaintiff can offer no evidence supporting a retaliatory motive by [Liberty Mutual investigators] Jay or Bennett. Plaintiff's subjective belief that she was retaliated against cannot overcome summary judgment.

Def.'s Summ. J. Br. 25 (citation omitted).

The parties do not dispute that Plaintiff was fired seven weeks after she filed a sexual harassment complaint against Mr. Feller.  There is also no dispute that Liberty Mutual's investigation of the complaint revealed that both Mr. Feller and Ms. Mosley, among other things, had shared sexually explicit and derogatory text messages about subordinate employees. The issue, therefore, is whether there is a causal connection between Ms. Mosley's protected activity in filing a sexual harassment complaint against Mr. Feller and her being fired by Liberty Mutual as needed to establish a prima facie case of retaliation.

Plaintiff argues that the close temporal proximity of her sexual harassment complaint and her termination is sufficient to establish a causal connection, particularly in light of evidence that she had an exemplary work record before she reported Mr. Feller for sexual harassment and evidence that male co-workers engaged in similar conduct but were not disciplined or were treated more leniently.  Pl.'s Resp. 12.

A period of up to four months has previously been found sufficient to satisfy the causal connection for summary judgment purposes. *See Weeks v. NationsBank, N.A.*, No. 3:98-CV-1352-

M, 2000 WL 341257, at *3 (N.D. Tex. 2000) (citing *Garrett v. Constar, Inc.*, No. 3:97-CV-2575, 1999 WL 354239 (N.D. Tex. 1999)).  The Fifth Circuit, however, has since recognized the tension in some of its unpublished decisions as to whether temporal proximity alone is sufficient to support an inference of causation at the summary judgment stage.  *Besser v. Texas Gen. Land Office*, 834 F. App'x 876, 885 (5th Cir.  2020). In addition, *Besser* "conclude[d] that two and one-half months between the protected activity and the adverse employment decision" in that case, without more, was "not within the 'very close' proximity that is necessary to establish causation."  *Id.*

Here, even assuming that the seven weeks between Ms. Mosley's protected activity and her termination qualifies as "very close" in light of other evidence, the court determines that there is insufficient evidence that Liberty Mutual's decision to terminate her employment was a pretext for retaliation.

Liberty Mutual asserts that its investigation of her complaint against Mr. Feller revealed that she had engaged in the following conduct in violation of Liberty Mutual's policies regarding sexual harassment and behavior expectations for employees and managers:

> (1) sen[ding] a photo of her genitals to a direct report; (2) sen[ding] a text message related to a direct report's breasts, indicating that Feller "wanted to suck them"; (3) sen[ding] text messages that one of her direct report's was "disgusting", she "probably sucks a good [male organ]," and in April—months before the employee's yearly review, that she would "make sure" that the employee got a 6 on her year-end rating; (5) sen[ding]sexual text messages to Feller about Laws; and (6) fail[ing] to disclose her relationship with Laws, Feller's direct report.

Def.'s Summ. J. Br. 20.  Liberty Mutual contends that it was the totality and nature of Plaintiff's violations that led its investigators Ms. Jay and Ms. Bennett to conclude that Plaintiff's conduct warranted terminating her employment.

Plaintiff disagrees with Liberty Mutual's decision, but to overcome the legitimate business reasons proffered by Liberty Mutual, she must do more than show that Liberty Mutual's decision

was incorrect or wrong. *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) ("[E]ven an incorrect belief tha[t] an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason for termination."). Moreover, "[v]iolation of a work-rule is a legitimate, nondiscriminatory reason for termination." *See, e.g., Rochon v. Exxon Corp.*, 1999 WL 1234261, at *3 (5th Cir. Nov. 22, 1999).  Accordingly, to prevail on her retaliation claim, Plaintiff must show that Liberty Mutual's rationale was pretextual, and that her sexual harassment complaint against Mr. Feller was the but-for cause of her termination.  Under the but-for cause standard, "a plaintiff must demonstrate that, but for the defendant's unlawful conduct, [her] alleged injury would not have occurred." *Comcast Corp. v. National Ass'n of African Am. Owned Media*, 140 S. Ct. 1009, 1014 (2020). Additionally, she must "must rebut each discrete reason proffered by [Liberty Mutual]." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (citing *Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010)).

Plaintiff contends that she has presented "ample evidence of pretext" because Liberty Mutual's reasons for firing her are not worthy of belief or the evidence establishes "partiality [by Liberty Mutual] in favor of male employees and/or employees who did not engage in protected conduct."  Pl.'s Resp. 12.  In this regard, Plaintiff asserts:

> Under its own policies, firing an employee for harassment or sexual harassment when no one was actually harassed shows pretext. There is no policy against employees getting piercings, and Liberty Mutual hosts an athletic facility where employees are allowed to expose themselves in a consensual fashion. It makes no sense to fire Plaintiff for providing a video, yet provide no discipline for the employee who requested it, and then allegedly showed it to another employee herself. The readily obvious distinction is that Mosley filed a complaint, and Reed did not. Likewise, the failure to consult Mosley's manager on the termination decision, the failure to give Mosley an opportunity to remediate like Feller was previously given, and the failure to address other male departmental managers who engaged in substantially similar conduct point to the obvious conclusion that a jury is required to resolve disputed fact questions in this case.

*Id.* Plaintiff further asserts that her conduct did not constitute harassment or sexual harassment that warranted her being fired because: (1) the derogatory and sexual remarks in her text messages to Mr. Feller were not shared with or made known to Ms. Gordon, whom she had jokingly mocked, and Liberty Mutual investigator Ms. Jay was unable in her deposition to point to any prior instances when Liberty Mutual fired someone for sexual harassment in the absence of a complaint by a fellow employee; and (2) although she admittedly sent Ms. Reed a video of her genital piercing, Ms. Reed, when questioned during Liberty Mutual's investigation, indicated that she did not feel harassed and did not believe she (Ms. Mosley) had done anything inappropriate. Pl.'s Resp. 8.

The "inconsistent treatment of [a plaintiff] raises disputed issues of material fact as to whether[ ] but for exercising her rights she would have been discharged." *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 711 (5th Cir. 2016). The court, however, has already addressed in detail Ms. Mosley's arguments that Liberty Mutual treated her differently from other employees and determined that these arguments fail for the reasons explained. Without evidence of disparate treatment, Ms. Mosley must show that Liberty Mutual's proffered explanation for terminating her employment is "false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citation omitted).

As noted, Ms. Mosley contends that Liberty Mutual's proffered explanation for terminating her employment is false or unworthy of credence because Liberty Mutual failed to consult her manager about the decision to fire her and, "[u]nder its own policies, firing an employee for harassment or sexual harassment when no one was actually harassed shows pretext." Pl.'s Resp. 12. Plaintiff, however, does not point to any evidence that Liberty Mutual had a policy or procedure that required its investigators to consider an employee's job performance or consult with the employee's manager regarding issues unrelated to job performance. In addition, Ms. Mosley's

subjective beliefs that her conduct did not violate Liberty Mutual's sexual harassment policy, and that Liberty Mutual should have consulted with her manager before firing her are insufficient to establish pretext and raise a genuine dispute of material fact as required to survive summary judgment. *See Risher v. Aldridge*, 889 F.2d 592, 598 (5th Cir. 1989) ("While it is true that Bobbitt may have reached a more informed decision if he had consulted the appraisal reports. . . , a less informed or misinformed decision does not, in itself, trigger liability under Title VII," which only protects against decisions motivated by unlawful animus, not unfair business decisions) (citations omitted); *Reynolds v. Sovran Acquisitions, L.P.*, 650 F. App'x 178, 183-84 (5th Cir. 2016) ("subjective beliefs and opinions regarding good employment practices are insufficient" to establish pretext) (quotation omitted).

Moreover, contrary to Plaintiff's assertion, Liberty Mutual's sexual harassment policy is not limited to unwelcome sexual advances or conduct intended, by the employee making sexual remarks about another employee, to be sexually harassing; nor does the policy require evidence that the intended target of the offensive conduct felt sexually harassed or filed a complaint. Liberty Mutual's sexual harassment policy, which is included in the Employee Handbook that was provided to Ms. Mosley in August 2016, defines sexual harassment much broader to include offensive joking about an individual's body and other conduct that creates an offensive work environment, even when the employee to whom the offense remarks are made is not the intended target of the joking:

> unwelcome sexual advances, requests for sexual favors, **or other verbal** or physical **conduct of a sexual nature; some examples include, but are not limited to**, actual or attempted rape, actual or attempted sexual battery, actual or attempted molestation, touching, pinching, patting, grabbing, brushing against or poking another employee's body, subtle or obvious pressure for sexual activities, **sexually oriented gestures, noises, remarks, jokes or other conduct about a person's sexuality or sexual experience, graphic remarks about an individual's body, sexually degrading words referring to an individual, offensive comments,**

> **offensive jokes, sexual innuendos,** subtle or obvious pressure for unwelcome sexual activities, or **displays of sexually suggestive objects or pictures** (including but not limited to sexually explicit e-mails, calendars, posters, websites, graphics, promotional or reading materials or similar downloaded materials), **when** submission to the conduct is an express or implied condition of employment; or submission to or rejection of the conduct is used as the basis for employment decisions; or **the conduct** is intended to or does interfere substantially with the employee's work performance or **creates an** intimidating, hostile or **offensive working environment, even if the employee is not the intended target of the sexual harassment.**

Def.'s Summ. J. App. 26 (emphasis added).

Thus, while Plaintiff's texts to Mr. Feller were made in jest, and her sexually offensive comments about the breasts and sexual habits of Ms. Bauer and Ms. Gordon were not shared directly with these women, the court concludes that such conduct, nevertheless, falls within the policy's prohibition against conduct that creates an offensive working environment, even in the absence of a formal complaint by Ms. Gordon or Ms. Bauer against Plaintiff.

Ms. Jay also explained in her deposition that the decision to fire Ms. Mosley was not based solely on her violation of Liberty Mutual's sexual harassment policy. Ms. Jay testified that Liberty Mutual had reviewed the "whole situation" and concluded that Ms. Mosley's conduct violated multiple company policies. Pl.'s App. 83. Ms. Bennett similarly testified that it was the totality, severity, and nature of Plaintiff's conduct that led Liberty Mutual to terminate her employment:

> Based on the severity of the conduct. It's not in alignment with our company code of conduct. It is not in alignment with our conduct policies that are outlined for all employees. It is not in compliance with our manager expectations. And, you know, as I mentioned before, there was a number—it wasn't just one thing—it was a number of them.

Def.'s Summ. J. App. 423. When asked to expound on some of the reasons why Ms. Mosley was fired, Ms. Bennett stated:

> It's the things we just discussed, which is—I can reiterate those for you, if needed, but the rating and the treatment of that employee; the video of her genital piercing sent to her direct report; comments related to body parts; derogatory comments such

**Memorandum Opinion and Order - Page 28**

as, "That person is 'disgusting'; sexual comments, "You want to suck her boobs,"
"She probably sucks good [male organ]"—those are the ones that I'm talking about
right now that I've already raised to you.

   Those are severe. They're completely inappropriate. They fall completely
outside our guidelines, even our core values of just treating people with dignity and
respect, and they're severe. There are multiple things that took place.

*Id.*

   Plaintiff does not address Liberty Mutual's additional reasons for terminating her

employment on the grounds that her conduct violated other company policies, including Liberty

Mutual's behavior expectations policy and policy requiring disclosure of romantic relationships

between employees, which are also included in the company's Employee Handbook.  Regarding

"Behavior Expectations," the Employee Handbook states:

   As a Liberty Mutual employee, **you are expected to always exhibit
appropriate behavior and a high degree of integrity**. Although it is impossible
to provide an exhaustive list, you are also expected to:

- **observe Company policies**, procedures, and safety rules;
- **recognize and respect the rights of co-workers**;
- treat all customers with respect, handle inquiries promptly and courteously; and
- be honest in your dealings at work and abide by national, state, and local laws.

Def.'s Summ. J. App. 28 (emphasis added).  This section of the Employee Handbook regarding

"Behavior Expectations" goes on to explain that, while "[t]he Employee Handbook deals with

various aspects of professional conduct, . . . it is not a comprehensive list."  *Id.*  It also warns that

"[s]hould your work habits, conduct, and demeanor become unsatisfactory in the Company's sole

judgment and discretion based on a violation of this or any other Company policy, you will be

subject to disciplinary or other job action, up to and including termination of employment."  *Id.*

Liberty Mutual's Code of Conduct similarly provides that managers have an added responsibility

to lead with integrity and serve as role models for their teams and warns that "Code violations can

lead to disciplinary action, up to and including termination of employment."  *Id.* at 40.

The common practice of Ms. Mosley sharing offensive, sexually explicit, and demeaning text messages with Mr. Feller about employees under their supervision easily falls into the category of "inappropriate behavior" or behavior lacking in integrity, even if done in jest. At a minimum, Ms. Mosley's decision to send a video to her subordinate Ms. Reed of her genital piercing also demonstrates poor judgment given her status as a manager.

Another section of the Employee Handbook dealing with Liberty Mutual's "Internal Conflicts" policy makes clear that: "Employees may not hire, directly supervise the activities of, review the work of, approve salary recommendations for, or work in the same department as . . . other employees with whom they are romantically involved without the approval of their Chief Talent Officer." *Id.* at 29. Ms. Mosley admitted that she did not disclose or report her romantic relationship with Mr. Laws to Liberty Mutual.[11] Although she did not directly supervise Mr. Laws, Ms. Mosley conceded that they worked in the same department.[12] She also acknowledged that there were occasions when she reviewed his work;[13] advised him about a presentation that he was giving to her and others;[14] provided feedback to his supervisor Mr. Feller about his performance as it pertained to committee contributions;[15] and, together with others, agreed with a recommendation by Mr. Feller that Mr. Laws receive a "+1" performance rating in calibration.[16]

In any event, in failing to respond to all of the reasons proffered by Liberty Mutual for terminating her employment, including those unrelated to violations of the sexual harassment

---

[11] Def.'s Summ. J. App. 70.

[12] *Id.*

[13] *Id.* at 74-75.

[14] *Id.* at 91.

[15] *Id.* at 21.

[16] *Id.* at 20-21.

policy, Plaintiff has failed to raise a genuine dispute of material fact as to whether Liberty Mutual's reasons for firing her were a pretext for retaliation. *See Jackson*, 619 F.3d at 468 ("Because we find that Jackson has failed to rebut one of Watkins's four proffered nondiscriminatory reasons for firing him, we need not address Watkins's remaining reasons for terminating Jackson[.]") (footnote omitted).  Plaintiff's failure in this regard also constitutes a waiver of the issue.[17] *See supra* n.5.

Thus, even considering the evidence of retaliation, in its totality and in the light most favorable to Ms. Mosley, the court, for all of the forgoing reasons, determines that she has not raised a genuine dispute of material fact "on the question of whether [Liberty Mutual] would not have taken the adverse employment action but for [her] protected activity." *See Brown*, 969 F.3d at 577.  Liberty Mutual is, therefore, entitled to judgment as a matter of law on her retaliation claim.

### 3.    Hostile Work Environment

Liberty Mutual contends that it is entitled to summary judgment on Plaintiff's hostile work environment claim and asserts in its reply that Plaintiff appears to have abandoned this claim by not addressing it in her response.

When a plaintiff fails to defend a claim in response to a dispositive motion, the claim is deemed abandoned. *See supra* n.6.  Plaintiff's Complaint does do not expressly allege a "hostile work environment" claim; however, her pleadings do contain allegations that could be construed

---

[17]  In the "Background Facts" section of her response, Plaintiff also asserts that, when interviewed, she told Ms. Jay that she had previously been "blacklisted" after making a prior complaint at another job. Plaintiff further asserts that "HR Investigator Allyson Jay thought the comment important enough that she put it in her notes."  Pl.'s Resp. 3. Plaintiff, however, does not explain the import or relevance of these facts or why she believes they might support a finding of pretext.  Accordingly, Plaintiff waived this issue as well in not briefing it. *See supra* n.5. Moreover, as Defendant correctly notes, Plaintiff's characterization of Ms. Jay's deposition testimony is not entirely accurate, as Ms. Jay explained that she always tries to write everything down that an employee says during interviews conducted as part of similar investigations.

as asserting a hostile work environment claim.  Specifically, Plaintiff alleges that she suffered sexual "harassment [that] was severe and pervasive" as a result of Mr. Feller's conduct and unwanted advances, and that such harassment was "continuing in nature over a period of time until her termination."  Pl.'s Compl. ¶ 5.04. Thus, in failing to address or respond to Liberty Mutual's hostile work environment contentions, Plaintiff abandoned this claim by not defending it in response to Liberty Mutual's summary judgment motion.  Liberty Mutual is, therefore, entitled to judgment as a matter of law on this claim.

## III.    Defendant's Motion for Reconsideration

As noted, Liberty Mutual requests that the court reconsider a prior ruling disallowing new evidence regarding the investigation of Andrew Schuetz's workplace conduct that it submitted in conjunction with its summary judgment reply.  Having already determined that Liberty Mutual is entitled to judgment as a matter of law on all claims asserted by Plaintiff, the court will deny as moot the Motion for Reconsideration.

## IV.    Conclusion

For the reasons explained, because Plaintiff abandoned any hostile work environment claim and failed to raise a genuine dispute of material fact regarding her sex discrimination and retaliation claims, Liberty Mutual is entitled to judgment as a matter of law on all Title VII and TCHRA claims asserted by her in this action for discrimination based on sex, retaliation, and hostile work environment.  Accordingly, the court **grants** Defendant's Motion for Summary Judgment (Doc. 27); and **dismisses with prejudice** all claims by Plaintiff. The court's ruling as to Defendant's summary judgment motion moots Defendant's Motion for Reconsideration (Doc. 48), which is **denied as moot.**  As no claims remain, judgment will issue by separate document in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 9th day of February, 2023.

Sam A. Lindsay
United States District Judge